UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-61814-CIV-SMITH

YOEL PITALUGA NUNEZ,
DAYAMI ROLDAN CRUZ,

                    **Petitioners,**

v.

**GARRETT RIPA**, in his official capacity as
Field Office Director of U.S. Immigration and
Customs Enforcement Miami Field Office, et al.

                    **Respondents.**

_____/

## ORDER DENYING PETITION

This cause comes before the Court on the habeas corpus petition (hereinafter "Petition") filed September 10, 2025, by Petitioners, Yoel Pitaluga Nunez ("Mr. Pitaluga") and Dayami Roldan Cruz ("Ms. Roldan") [DE 1], Respondents' Return and Memorandum of Law [DE 9], and Petitioners' Traverse [DE 10].

## PROCEDURAL HISTORY

The Petitioners, Yoel Pitaluga Nunez ("Pitaluga") and Dayamy Roldan Cruz ("Roldan") (collectively, "Petitioners"), are natives and citizens of Cuba. *See* D.E. 1 at ¶ 1. Petitioners were paroled into the United States on January 13, 2024, through the Humanitarian Parole for Cubans, Haitians, Nicaraguans, and Venezuelans ("CHNV") parole program. *See Id.* On January 17, 2025, Petitioners filed a Form I-485, Application to Register Permanent Residence or Adjust Status with U.S. Citizenship and Immigration Services, which remains pending. *See* D.E. 9 at p. 2. On March 25, 2025, DHS terminated the CHNV program, as well as parole granted pursuant to the program. *See* D.E. 9-4, Termination of Parole Processes for Cubans, Haitians, Nicaraguans, and

Venezuelans, 90 Fed. Reg. 13611 (Mar. 25, 2025).

On July 6, 2025, Petitioners were encountered by immigration officials during a traffic stop. *See* D.E. 1 at ¶ 26; *see also* D.E. 9-3. DHS processed the Petitioners for expedited removal pursuant to Section 235(b)(1) of the Immigration and Nationality Act (INA) as aliens not in possession of valid immigrant visas, reentry permits, or other valid entry documents in violation of INA § 212(a)(7)(A)(i)(I).[1] *See* D.E. 9-2. On the same day, Petitioners provided a sworn statement to immigration officials. *See* D.E. 9-5 Record of Sworn Statement. Petitioners were then taken into ICE custody. *See* D.E. 9-6. On July 7, 2025, Petitioners were served with a Notice of Third-Country Removal to Mexico. *See* D.E. 9-7, Notice of Removal.

On July 21, 2025, and August 27, 2025, an immigration judge denied Roldan's and Pitaluga's respective requests for bond because the immigration court lacked authority to redetermine the Petitioners' custody. *See* 8 C.F.R. § 1003.19(h)(2)(i)(B) (2025*); see also* D.E. 9-8, Bond Order, August 27, 2025; *see also* D.E. 9-9 Bond Order, July 21, 2025 (Roldan); *see also* D.E. 9-10, Bond Order, July 21, 2025 (Pitaluga). Both Petitioners are currently detained. *See* D.E. 9-1 at ¶¶ 5-6.

On September 10, 2025, Petitioners filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2241, challenging Respondents' application of expedited removal to parolees under the CHNV program. Petitioners argue that Respondents' actions exceed their statutory authority under the Immigration and Nationality Act, that 8 U.S.C. §1252(e) does not strip this Court of jurisdiction, and that, at a minimum, the Suspension Clause and Due Process Clause of the Constitution guarantee access to judicial review.

The court has considered the Petition, the record, and relevant authorities, with the benefit of

---

[1] On September 18, 2025, Petitioners were served with corrected Forms I-860. *See* Ex. A, Declaration, ¶ 16.

oral argument from the parties on September 25, 2025. For the reasons set forth below, the habeas corpus petition is denied.

<strong>LEGAL BACKGROUND</strong>

### I.      Expedited Removal

Two groups of aliens are subject to expedited removal: (1) aliens arriving in the United States, 8 U.S.C. § 1225(b)(1)(A)(i) ("an alien ... who is arriving in the United States"), and (2) aliens designated by the Secretary of Homeland Security within certain statutory limits, *id.* ("an alien ... described in clause (iii)"). *See* 8 U.S.C. § 1225(b)(1)(A)(i), (iii); 8 C.F.R. § 235.3(b)(1). As to the first group, an alien who arrives at a port of entry and is subsequently paroled into the United States is subject to expedited removal because he retains his status as an alien "arriving in".the United States. 8 C.F.R. § 1.2. As to the second group, the statute limits designation as follows: "An alien ... who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph." 8 U.S.C. § 1225(b)(1)(A)(iii)(II). Aliens in either the first group (arriving aliens) or second group (designated aliens) can be removed through the expedited removal process if they are inadmissible on the basis of either fraud or willful misrepresentation, 8 U.S.C. § 1182(a)(6)(C), or a lack of valid documents, 8 U.S.C § 1182(a)(7). 8 U.S.C. § 1225(b)(1)(A)(i).

In 1997, DOJ promulgated implementing regulations to apply expedited removal initially only to aliens arriving at a port of entry. *Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10,312, 10,312-13 (Mar. 6, 1997) (noting the agency's view "that the statute seemed to differentiate more clearly between aliens at ports-of-entry and those encountered elsewhere in the

3

United States"). The Department adopted a regulation defining arriving alien to include "an alien who seeks admission to or transit through the United States, as provided in 8 CFR part 235, at a port-of-entry." 8 C.F.R. § 1.1(q) (1998) (currently at 8 C.F.R. §§ 1.2, 1001.1(q)). Critically, it also provided: "An arriving alien remains such *even if paroled* pursuant to section 212(d)(5) of the Act [8 U.S.C. § 1182(d)(5)]." *Id.* (emphasis added). That rule went into effect on April 1, 1997. 62 Fed. Reg. at 10,312.

Although the regulation has been revised since its adoption, the amendments only confirm that "arriving alien" includes aliens paroled at a port of entry, like Petitioners. In 2006, the regulatory definitions were amended to specifically provide, as they do now, that an arriving alien includes aliens who are paroled "even after any such parole is terminated or revoked." 8 C.F.R. §§ 1.2, 1001.1(q); *see Eligibility of Arriving Aliens in Removal Proceedings to Apply for Adjustment of Status and Jurisdiction to Adjudicate Applications for Adjustment of Status*, 71 Fed. Reg. 27,585, 27,591 (May 12, 2006).

## II.    Parole

Congress has long provided authority to immigration officials to use parole to temporarily allow aliens to proceed into the interior of the United States, emphasizing that parole is not an "admission" within the meaning of the INA. 8 U.S.C. §§ 1101(a)(13)(B), 1182(d)(5)(A). "[A]liens who arrive at ports of entry—even those paroled elsewhere in the country for years pending removal—are 'treated' for due process purposes 'as if stopped at the border.'" *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 215 (1953)); *see also Leng May Ma v. Barber*, 357 U.S. 185, 188-90 (1958).

The relevant statute provides that "[t]he Secretary of Homeland Security may ... in [her] discretion parole" an "alien applying for admission," and specifies that such a parole is done "temporarily under such conditions as [the Secretary] may prescribe [and] only on a case-by-case

4

basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). The statute further states that parole may be terminated "when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served." *Id.* Thus, the grant of parole and its termination are committed to the broad discretion of the Secretary. After parole is terminated, "the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall *continue to be dealt with in the same manner as that of any other applicant for admission* to the United States." *Id*. (emphasis added). In other words, whenparole ends, the alien "shall be restored to the status that he or she had at the time of parole." 8 C.F.R. § 212.5(e)(2)(i).

## DISCUSSION

### A. Expedited Removal Orders are Subject to Review only in Extremely Limited Circumstances which are Inapplicable in this Case.

As a preliminary matter, an alien may be removed from the United States by, *inter alia*, expedited removal under INA § 235(b)(1) or removal proceedings before an immigration judge under INA § 240. *See* 8 U.S.C. § 1225(b)(1), 1229a. The DHS has discretion to place aliens in expedited removal under INA § 235(b)(1) or to initiate removal proceedings before an immigration judge under INA § 240. *Matter of E-R-M- & L-R-M-*, 25 I&N Dec. 520, 524 (BIA 2011). Here, upon encountering the petitioners on July 6, 2025, DHS elected to place the Petitioners in expedited removal proceedings pursuant to INA § 235(b)(1). *Cf. Matter of W-C-B-*, 24 I&N Dec. 118, 122 (BIA 2007) (affirming the dismissal of proceedings when "removal proceedings [under INA § 240] [a]re not necessary to remove the respondent from the United States"). The regulations do not limit DHS's authority to choose between proceedings only to the time of the initial encounter but rather authorize DHS to initiate removal proceedings at any time for an alien who fits within specified criteria. *See* 8 C.F.R. § 235.3(b)(1).

Expedited removal orders issued pursuant to 8 U.S.C. § 1225(b)(1) are not subject to judicial review in habeas proceedings except for the limited determinations of: 1) whether the petitioner is an alien; 2) whether the petitioner was ordered removed; and 3) whether the respondent is a lawful permanent resident or refugee. 8 U.S.C. § 1252(a)(2)(e); *see also Garcia de Rincon v. Dep't of Homeland Sec.*, 539 F.3d 1133, 1140 (9th Cir. 2008) (acknowledging the Court's limited habeas jurisdiction to the three enumerated circumstances); *Shunaula v. Holder*, 732 F.3d 143, 145-47 (2d Cir. 2013) (§ 1252(a)(2)(A) and (e) bar judicial review of expedited removal order); *Khan v. Holder*, 608 F.3d 325, 329-30 (7th Cir. 2010) (acknowledging the "limited exceptions to the jurisdictional bar" of § 1252(e)). Petitioners do not contest that they are aliens, or are not lawful permanent residents or refugees, or that they have been ordered removed. These are the only circumstances in which judicial review is appropriate and as they do not apply to this case this Court lacks jurisdiction to review the expedited removal in this case.[2]

Petitioners challenge the removal order based on their status as parolees under the CHNV parole program and their pending applications for permanent residency under the Cuban Adjustment Act (CAA). D.E. 1 at ¶¶ 1-2.

But the Court lacks subject matter jurisdiction to review Petitioners' claims. Congress has "significantly limited the power of federal courts to review [8 U.S.C.] § 1225(b)(1) expedited-removal orders." *United States v. Herrera-Orozco*, No. C-11-542, 2011 WL 3739160, at *1 (S.D. Tex. Aug. 23, 2011) (citing *Brumme v. INS*, 275 F.3d 443, 447 (5th Cir. 2001)).

Congress established the expedited removal system through the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), which amended the INA, in order to

---

[2] The Court acknowledges that Petitioners claimed in oral argument that the expedited removal order they currently subject to is not valid and that they were not served with an I-860 until September 18, 2025. However, the Court finds this argument unavailing as the Respondents were able to produce the original I-860s provided to Petitioners on the very day they were detained by DHS.

aggressively expedite removal of certain inadmissible aliens. *Thuraissigiam*, 591 U.S. at 108-09. The expedited removal system was adopted in large part to address the growing number of smuggled aliens who arrived in the United States with no entry documents, declared asylum immediately upon arrival, and then overcrowded immigration court dockets and detention centers, in some cases only to be released into the general population. H.R. Rep. No. 104-469, at 107, 117-18 (Conf. Rep.) (1996). Under the expedited removal system, in accordance with 8 U.S.C.§ 1225(b)(1) and 8 U.S.C. § 1252(a)(2)(A)(i), arriving aliens like Petitioners with no valid entry document may be placed in expedited removal proceedings, and DHS's decisions in implementing and executing the expedited removal proceedings are, with limited exceptions not applicable to Petitioners, not subject to judicial review.

**B. Petitioners' Claims Do Not Fall Under Any of the Limited Exceptions Permitting Judicial Review of Expedited Removal Proceedings Under Section 1252(e)**

Section 1252(e)(1) provides that "no court may . . . enter declaratory, injunctive, or other equitable relief" pertaining to an order of expedited removal except as "specifically authorized in a subsequent paragraph of this subsection." Section 1252(e)(2), in turn, is the subsequent paragraph within subsection (e) that supplies the sole means of review of an order of expedited removal, stating in its entirety:

(2) Habeas corpus proceedings

Judicial review of any determination made under section 1225(b)(1) of this title is available *in habeas corpus proceedings*, but shall be limited to determinations of--

    (A) whether the petitioner is an alien,

    (B) whether the petitioner was ordered removed under such section, and

    (C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, has been admitted as a refugee under section 1157 of this title, or has been granted asylum under section 1158 of this title, such status not having been terminated, and is entitled to such further inquiry as prescribed by the

7

Attorney General pursuant to section 1225(b)(1)(C) of this title.

8 U.S.C. § 1252(e)(2) (emphasis added). As specified in section 1252(e)(5), "[t]here shall be no review of whether the alien is actually inadmissible or entitled to any relief from removal." And section 1252(e)(4) provides that, in the event that section 1252(e)(2) is satisfied, the sole available relief is that the alien "be provided a hearing in accordance with section 1229a of this title" (i.e., a removal proceeding to decide "the inadmissibility or deportability of the alien"). *See also* 8 U.S.C. § 1229a(a)(1).

Consistent with the provisions of 8 U.S.C. § 1252, courts in this district have agreed that no jurisdiction exists in district court for challenges, like Petitioners', to an order of expedited removal. *See, e.g., Torrez v. Swacina*, No. 20-20650-CIV, 2020 WL 13551822, at *3 (S.D. Fla. Apr. 17, 2020) (dismissing habeas petition and finding the court lacked jurisdiction to hear the petitioner's challenge related to expedited removal); *Del Cid v. Barr*, 394 F.Supp.3d 1342, 1346, 1348-49 (S.D. Fla. 2019) (finding jurisdiction-stripping provisions of INA foreclose review of expedited removal order, provision did not violate Suspension Clause, and alien not entitled to emergency stay of removal). Here, Petitioners have not offered anything about their circumstances that distinguishes them from the cases in which courts consistently find a lack of subject matter jurisdiction to review determinations by immigration authorities in expedited removal proceedings. *See*, *e.g.*, *Torrez*, 2020 WL 13551822, at *3; *Chaviano v. Bondi*, No. 25-22451-CIV, 2025 WL 1744349, at *4 (S.D. Fla. June 23, 2025) (finding a lack of subject matter jurisdiction to review petitioner's expedited removal order); *Quintero v. Field Off. Dir. of Miami ICE Field Off.*, No. 25-cv-22428-CMA, D.E. No. 25 (S.D. Fla. June 23, 2025) (vacated as moot).

### 1. 8 U.S.C. § 1225(b)(1)(F) Exception Does Not Apply to Petitioners.

Petitioners attempt to evade expedited removal by claiming they fall under the exception to expedited removal under 8 U.S.C. § 1225(b)(1)(F). [D.E. 1 at ¶ 97]. However, as Respondents

correctly point out, such exception does not apply to Petitioners. In 2017, when President Obama rescinded the "Wet Foot, Dry Foot" policy, it was determined that Cuban migrants would no longer be exempt from expedited removal. *See* Federal Register – Eliminating Exception to Expedited Removal Authority for Cuban Nationals Encounter in the United States or Arriving by Sea, D.E.-12; Federal Register – Eliminating Exception to Expedited Removal Authority for Cuban Nationals Arriving by Air, D.E. 9-13. Petitioners are clearly no longer exempt from expedited removal as Cuban migrants, or any of the other exceptions argued in Petitioners' Petition.

### C. 8 U.S.C. § 1252(g) Precludes Review of the Decision to Commence Expedited Removal Proceedings

To the extent that the Petitioners are challenging the Government's ability to "commence proceedings" against them, such challenge is foreclosed by 8 U.S.C. § 1252(g). Section 1252(g) provides that "notwithstanding any other provision of law (statutory or nonstatutory) ... no court shall have jurisdiction to hear any cause or claim by *or on behalf of any alien* arising from the decision or action by the Attorney General to [1] commence proceedings, [2] adjudicate cases, or [3] execute removal orders against any alien," except through a petition for review from a final order of removal filed in a court of appeals. (Emphasis added). Though this section "does not sweep broadly," *Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 296 (3d Cir. 2020), its "narrow sweep is firm," *E.F.L. v. Prim*, 986 F.3d 959, 964-65 (7th Cir. 2021). Courts "cannot entertain challenges to the enumerated executive branch decisions or actions" outside a petition for review. *E.F.L.*, 986 F.3d at 964. The Supreme Court has explained that 8 U.S.C. § 1252(g) is "directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485 & n.9 (1999) ("*AADC*") ("Section 1252(g) seems clearly designed to give some measure of protection to ... discretionary determinations.").

Petitioners are requesting that this Court "impose judicial constraints" on the Government's

"prosecutorial" decision to "commence" expedited removal proceedings against them. [D.E. 1 at ¶¶ 119-120]. But that is precisely one of the actions that § 1252(g) bars. As § 1252(g) bars this Court from hearing any claim related to the decision to "commence proceedings," this Court declines to consider Petitioners' arguments related to such.

### D.   Petitioners' Parole is No Longer Valid, Subjecting Them to Removal

Petitioners argue that "[a]s parolees, petitioners are statutorily exempt from expedited removal." [D.E. 1 at ¶ 5]. Petitioners also claim that they fall "within the scope of pending litigation under the Administrative Procedure Act (APA) that temporarily stayed the application of expedited removal for parolees nationwide. *See Coalition for Humane Immigration Rights v. Noem*, 25-cv-872 (D.D.C. 2025)" (*CHIR*). *Id*. However, such is not the case. On September 12, 2025, the United States Court of Appeals for the District of Columbia ordered the dissolution of the partial administrative stay, and noted that appellants made no assertion that the stay precluded the government from applying expedited removal to parolees under the "arriving alien" regulation. *See Coalition for Human Immigrant Rights, et al. v. Kristi Noem, et al.*, No. 25-5289 (D.C. Cir. Sept. 12, 2025), D.E. 9-11. Judge Walker's concurring opinion offers clarity on the Court of Appeals order, stating "[t]he district court's order imposes no irreparable harm. That's because it is best read not to preclude the Government from applying expedited removal to parolees pursuant to 8 C.F.R. §§ 1.2 and 235.3(b)(1)(i)." *Id*. As Judge Walker pointed out, and the entire panel alluded to, the district court's stay of certain agency actions does not enjoin the Government from applying expedited removal to parolees to the extent they are deemed inadmissible as "arriving in" the United States and fall within the "arriving alien" definition at §1.2. *See id.; see also* 8 C.F.R § 235.3(b)(1)(i).

### 1.   Petitioners are Properly Subject to Expedited Removal.

An alien (like Petitioners) who arrives at a port of entry and is paroled into the United

States, and whose grant of parole is terminated, is subject to expedited removal because [they] retain their status as an "arriving alien" under the INA. The statute provides that aliens arriving in the United States who meet the other requirements (i.e. inadmissibility on fraud or lack-of-documents grounds) may be subject to expedited removal. 8 U.S.C. § 1225(b)(1)(A)(i); 8 C.F.R.§ 235.3(b)(1). An alien—whether their parole is revoked or not—remains an applicant for admission standing at the threshold of entry. *See* 8 U.S.C. § 1182(d)(5)(A). As explained by Congress, parole "shall not be regarded as an admission of the alien and when the purposes of such parole shall… have been served the alien shall forthwith return… to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.*; *see Jennings v. Rodriguez,* 583 U.S. 281, 288 (2018). The parole regulations confirm what Congress made apparent – that an arriving alien who is paroled continues to be considered an arriving alien. The governing regulations define arriving alien to include "an applicant for admission coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. §§ 1.2, 1001.1(q). "An arriving alien remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act [8 U.S.C. § 1182(d)(5)], and even after any such parole is terminated or revoked." 8 C.F.R. § 1.2.

Congress's use of the phrase "arriving in" encompasses aliens paroled at a port of entry given the statutory and historical backdrop of parole. Congress legislated with the knowledge that the Supreme Court has long established that aliens paroled into the United States are legally in the position of aliens standing at the border, regardless of the duration of their parole. *E.g., Leng May Ma*, 357 U.S. at 188-91; *Ibragimov v. Gonzales*, 476 F.3d 125, 134 (2d Cir. 2007). "This is why a parolee normally fits the regulatory definition of an 'arriving alien'—for legal purposes, the parolee is a 'an applicant for admission coming or attempting to come into the United States at a port-of-entry' even if, in actuality, a paroled alien has already physically come into the United

11

States." *Duarte v. Mayorkas*, 27 F.4th 1044, 1059-60 (5th Cir. 2022) (citation omitted). Congress amended the parole statute against that background, leaving intact the operative language: "[W]hen the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A); Petitioners are not currently paroled in the United States and are subject to expedited removal.

### E.  Petitioners Have Failed to State a Claim for Mandamus

Finally, Petitioners have failed to state a claim entitling them to mandamus relief regarding their I-485 applications to become permanent residents. In a mandamus action under 28 U.S.C. § 1361, a [petitioner] must establish that he has a clear right to the relief sought, that the agency has a clear duty to perform the act sought; and that no other adequate remedy at law exists. *See Nyaga v. Ashcroft*, 323 F.3d 906, 911 (11th Cir. 2003) (citing *Heckler v. Ringer*, 466 U.S. 602, 617 (1984)); *see also Ahmed v DHS*, 328 F.3d 383 (7th Cir. 2003). The APA authorizes suit by any "person suffering legal wrong because of agency action or adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. "Agency action" is defined as, among other things, "failure to act." 5 U.S.C. § 551(13). The APA requires agencies to conclude matters "within a reasonable time," 5 U.S.C. § 555(b), and authorizes federal courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). In order to proceed on a claim under 5 U.S.C. § 706(1), a plaintiff must assert "that an agency failed to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004). Thus, there must be a "showing of prejudice before agency action can be set aside for its lack of punctuality." *King v. Nat'l Transp. Safety Bd.*, 766 F.2d 200, 202 (5th Cir. 1985).

Petitioners do not allege that their applications to become permanent residents have been

"unreasonably delayed," but even if they alleged such, the applications have been pending for less than 9 months, where the average processing time for an I-485 is 21.5 months. *See* https://egov.uscis.gov/processing-times/ (last visited September 18, 2025). "Congress has given the agencies wide discretion in the area of immigration processing." *Ghadami v. United States Dep't of Homeland Sec.*, No. CV 19-00397 (ABJ), 2020 WL 1308376, at *8 (D.D.C. Mar. 19, 2020) (citing *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017) (noting that a two-year delay in processing an immigration visa "does not typically require judicial intervention"). In fact, many Courts have refused to intervene on allegations of a two-year delay of processing immigration benefits. *Ghadami v. United States Dep't of Homeland Sec.*, No. CV 19-00397 (ABJ), 2020 WL 1308376, at *8 (D.D.C. Mar. 19, 2020); *Bhagerian v. Pompeo,* No. CV 19-1049 (JDB), 2020 WL 674778, at *5 (D.D.C. Feb. 11, 2020) (granting defendants' motion to dismiss because the court found that a twenty-five-month delay in determining waiver eligibility was not unreasonable). Likewise, here, a delay of 9 months does not require judicial intervention on its face. Because there is no deadline imposed by Congress for processing applications, there is no Congressional deadline to violate.

## CONCLUSION

1.      For the foregoing reasons, Petitioners are properly eligible for expedited removal and thus their habeas petition is **DENIED**.

2.      Further, to the extent the Petitioners are claiming "unreasonable delay" in the adjudication of their I-485 applications, any delay is clearly reasonable. As such, the Mandamus claim is **DENIED**.

3.      Petitioner's Habeas Petition and Mandamus Complaint is **DENIED**.

4.      This case is **DISMISSED with prejudice**.

5.      The Clerk of the Court is directed to **CLOSE** this case.

14

6.       Any pending Motions are **DENIED as moot**.

7.       The **STAY** of removal entered by this Court is hereby **LIFTED**.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this October 10th, 2025.

**RODNEY SMITH**
**UNITED STATES DISTRICT JUDGE**

Cc: Counsel of Record